# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 24, 2013 Session

## STATE OF TENNESSEE v. STANLEY JASON DANIELS

**Direct Appeal from the Criminal Court for Claiborne County**
**No. 2012-CR-1203     E. Shayne Sexton, Judge**

---

**No. E2013-00694-CCA-R3-CD - Filed January 16, 2014**

---

The appellant, Stanley Jason Daniels, pled guilty to sexual contact with an inmate and was sentenced as a Range I, standard offender to one year to be served on probation. On appeal, the appellant contends that the trial court erred by denying his request for judicial diversion. Based upon the oral arguments, the record, and the parties' briefs, we reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Reversed, and the Case is Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER, J., joined. JOHN EVERETT WILLIAMS, J., filed a dissenting opinion.

Marcos M. Garza and John C. Barnes, Knoxville, Tennessee, for appellant, Stanley Jason Daniels.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Lori Phillips-Jones, District Attorney General; and Jared Effler, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

In November 2012, the appellant pled guilty to sexual contact with an inmate, a Class E felony. At the guilty plea hearing, the State gave the following factual account of the crime:

> By stipulation, your Honor. If it please the Court, in Case

> Number 2012-CR-1203, the State of Tennessee versus Stanley Jason Daniels, the parties would stipulate that on or about January the 13th, 2012, in Claiborne County, Tennessee, that Mr. Daniels, while employed as a correctional employee for the Claiborne County sheriff's office, did unlawfully, feloniously and knowingly engage in sexual contact with an inmate who was in custody of the Claiborne County jail, a penal institution, in violation of Tennessee Code Annotated 39-16-408.

Pursuant to the plea agreement, the trial court was to impose a one-year sentence with the manner of service to be determined after a sentencing hearing.

At the sentencing hearing, the appellant requested that the trial court grant him judicial diversion, which the State opposed, and submitted into evidence eighteen letters written on his behalf by friends and family. The State did not present any witnesses at the hearing. However, the State advised the trial court that the female victim was in the courtroom and did not want to testify but that she "does want her wish known to the Court that she is likewise opposed to judicial diversion."

Jim Daniels, the appellant's younger brother, testified for the appellant that he had always looked up to the appellant. He described the appellant as "a very good man" and a "great" father to the appellant's two young children and said, "There's nothing bad about my brother. You can't find nothing bad about him." Up until the charge in this case, the appellant maintained employment and provided for his family. Mr. Daniels acknowledged that the appellant's sexual contact with the victim was wrong but said that "in a lifetime of doing good, that man has made one mistake. How can you judge a life on one thing that he's done wrong? That does not reflect my brother." Mr. Daniels said that he and the appellant grew up in church and that the appellant had never consumed drugs or alcohol. He said that he had talked with the appellant about the crime and that the appellant was remorseful.

On cross-examination, Mr. Daniels testified that the appellant was married. Mr. Daniels acknowledged that the appellant broke promises to be faithful to the appellant's wife and uphold the laws of this state.

Joe Gibson testified that he had known the appellant fourteen or fifteen years and that "[a]s a friend, I couldn't ask for any better." He stated that he and the appellant shared the same faith, that they both sang in church, and that he had "a lot of respect for [the appellant], the way he lives his life." Mr. Gibson said the appellant had high moral standards and was good to the appellant's children. He acknowledged that the appellant's crime "certainly isn't something that would be a very Christian like thing to do" but said that the appellant was

very remorseful.

Natosha Daniels, the appellant's wife, testified that she had known the appellant seventeen years and that they had been married eight years. She said the appellant was kind to her and would "do anything for anybody." The appellant was always at home with her and their children except for once per week when he sang at church with Joe Gibson. The appellant introduced her to church and took their children to church every day the church was open. She said that the appellant previously worked as a mechanical engineer for Clayton Homes, that he "got laid off," and that he became a police officer because he loved to help people.

Mrs. Daniels read aloud a letter she wrote to the trial court. In the letter, she stated that she could not ask for a better husband or father than the appellant and that she could not imagine life without him. She stated that convicting the appellant of a felony would make it hard for them to provide for their family, that she believed the appellant was sorry for his actions, and that "I know that something like this would never happen again."

On cross-examination, Mrs. Daniels testified that three police officers came to her home to speak with the appellant about the crime and that they talked with him on the porch. After the officers left, the appellant told Mrs. Daniels that "he was under investigation and that they were taking his car and his gun." The appellant claimed he did not know why the officers were investigating him. Later, he told Mrs. Daniels that he had had sexual contact with an inmate while he was transporting the inmate to Peninsula. Mrs. Daniels said that the appellant lost his job with the sheriff's department, that he underwent hernia repair surgery, and that he had remained unemployed because "[h]e didn't want to have to worry about . . . telling the people that he worked for why he would have to come to Court." She acknowledged that the appellant broke his vows to her but said, "I believe that he is a good man, and he's never once made me feel like he cheated on me . . . . He loves me and I love him." She acknowledged that the appellant broke his oath as a police officer but said that he was a good officer.

The appellant took the stand and read aloud a letter he wrote to the trial court. In the letter, he apologized to his coworkers, his friends, his church, his family, the sheriff's department, and the victim. He said that he "made a mistake" and that "[t]hat's not the real me." He said that the mistake was "nobody's fault but my own" and that it cost him his income and the job he loved. He stated that due to his actions, he lost his house "to pay for a good lawyer" and lost his dignity. He said that people he had known all of his life would no longer speak to him and that he had learned his lesson. He "beg[ged]" that the court grant him judicial diversion.

On cross-examination, the appellant acknowledged that his case generated a lot of media attention. He said that he was doing "seasonal" work by mowing lawns and that he was submitting bids for commercial mowing. He acknowledged that he allowed the victim to perform oral sex on him. He also acknowledged that prior to the incident, he stopped at a gas station and bought cigarettes for her. He said he had been told that he could provide cigarettes for an inmate to keep the inmate calm during transport. However, he acknowledged that providing her with cigarettes violated the sheriff's department's policy. After the appellant bought cigarettes for the victim, he allowed her to ride with him in the front seat of his patrol car, which was another violation of the department's policy. The appellant denied allowing the victim to ride in the front seat because he wanted her to perform oral sex on him and denied telling the victim that she had pretty eyes and hair. He said that he needed judicial diversion so that he could provide for his children.

On redirect examination, the appellant acknowledged that he would never be able to work as a police officer again. He stated that judicial diversion would not send a message that his conduct was acceptable and that "I think that this embarrassment is enough to keep people away from doing something like this."

The appellant's presentence report was introduced into evidence. According to the report, the then thirty-three-year-old appellant and his wife had two children, a five-year-old daughter and a three-year-old son. In the report, the appellant stated that he graduated from high school and obtained an associate's degree in engineering and design from Southeast Community College in Kentucky. He described his mental health as excellent but said his physical health was poor due to recent surgery. The appellant stated in the report that he took prescription medication for diabetes, high cholesterol, high blood pressure, and surgery pain and that he had never tasted alcohol or consumed illegal drugs. The report shows that the appellant worked as a product designer for Clayton Homes from August 2003 to November 2008 and as a transport officer for the Claiborne County Sheriff's Department from November 2009 to January 2012. According to the report, the appellant had one prior conviction for speeding.

Although the victim did not testify at the hearing, the victim's written statement to the sheriff's department was included in the presentence report. In the statement, the victim claimed that after the appellant stopped at the gas station, he put her into the front seat. The victim asked him for a cigarette, and he asked her what she would do for it. The victim told him that she would do anything. She said that the appellant "played with [her] boobs, butt and other area" and that he wanted her to have sexual intercourse with him. However, he did not have any protection, so victim told him that she would "rather suck him." The victim said that while she performed fellatio on the appellant, he drove on "crazy [roads]." She said the drive from the jail to their destination took three hours.

At the conclusion of the hearing, the State argued that the trial court should deny the appellant's request for judicial diversion because he violated a position of public trust and because granting judicial diversion would undermine the public confidence in government. Defense counsel agreed that "we've got a public trust issue" but contended that the trial court should grant judicial diversion because the appellant needed to provide for his family, had a scant criminal history, had an excellent social and employment history, and had an associate's degree. Counsel stated that although the appellant's physical health was not "great," his mental health was good. Counsel argued that the appellant was amenable to correction, noting that the investigating officer for the presentence report stated in the report that the appellant was a low risk to reoffend. Finally, defense counsel addressed the deterrence value of granting judicial diversion, stating that "this isn't the sort of thing that if the diversion is granted everyone is gonna think that it's okay to do what Mr. Daniels has done. He's paid for this and he's paid through the nose, and he will continue to pay every day of his married life."

The trial court described this case as "a tragic set of circumstances," stating that the appellant had been affected professionally and personally and that "[a]lthough . . . I did not hear from the victim in the case, it's clear from her appearance here today and her demeanor while here that this has greatly affected her." The trial court went on to say that "[t]he defendant in this case was a sworn officer of the law. He has accepted a level of public trust that others do not seek nor have the character to carry out." The trial court found that although the appellant had lived an "exemplary" life and was "a fine man in every way," he

> has stepped over a line that exists for that reason. Whether it's a Judge, whether it's another officer of the Court, we have certain duties and responsibilities that exceed those of the regular citizenry and because of that, that public trust must be protected and when it is broken, it must be dealt with.

The trial court then stated as follows:

> I find that all of the factors raised by the defendant do have some weight, the absence of prior record, the circumstances of this offense. There are -- I supposed I won't call them mitigation but somewhat explanatory, but none rise to the level of the Court's responsibility to protect the public from this type of behavior. We do have a victim in this case, and she deserves and has deserved the protection. When one is being transported to another facility or one is being managed by a person within the jail, they are entitled to a level of protection

-5-

that that oath entitles -- that the oath sets out.

The trial court denied the appellant's request for judicial diversion and ordered that he serve his one-year sentence on probation.

## II. Analysis

The appellant contends that the trial court erred by denying his request for judicial diversion, arguing that the court considered only four of the required seven factors. The appellant also contends that the trial court denied his request based solely upon his status as a law enforcement officer and that "[u]nder the judge's stated reasoning, no law enforcement officer convicted of sexual contact with an inmate could ever be granted diversion." The State argues that the trial court "explicitly stated" that it had considered all seven factors and that the trial court acted within its discretion by considering the appellant's violation of the public trust. Additionally, the State argues that this court should apply the standard of review from State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012), in which our supreme court ordered a presumption of reasonableness to within range sentencing decisions that reflect a proper application of the purposes and principles of the Sentencing Act. We conclude that the case should be remanded in order for the trial court to explain fully why the appellant was denied judicial diversion and why the factors against judicial diversion outweighed the factors supporting judicial diversion.

Relevant to this case, sexual contact with an inmate occurs when "a law enforcement officer . . . [engages] in sexual contact or sexual penetration . . . with a prisoner or inmate who is in custody at a penal institution . . . , whether the conduct occurs on or off the grounds of the institution." Tenn. Code Ann. § 39-16-408(b). Pursuant to Tennessee Code Annotated section 40-35-313(a)(1)(B)(i), a defendant is eligible for judicial diversion when he or she is found guilty or pleads guilty or nolo contendere to a Class C, D, or E felony; has not previously been convicted of a felony or a Class A misdemeanor; and is not seeking deferral for a sexual offense.[1] Additionally, in determining whether to grant a defendant judicial diversion, the trial court must consider all of the following factors: (1) the defendant's amenability to correction, (2) the circumstances of the offense, (3) the defendant's criminal record, (4) the defendant's social history, (5) the status of the defendant's physical and mental health, (6) the deterrence value to the defendant and others, and (7) whether judicial diversion will serve the interest of the public as well as the defendant. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) (citing State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996)). The record must reflect that the trial court

---

[1]Sexual contact with an inmate is not a "sexual offense" for purposes of the judicial diversion statute. See Tenn. Code Ann. § 40-35-313(a)(1)(B)(ii).

has taken all of the factors into consideration, and "we may not revisit the issue if the record contains any substantial evidence supporting the trial court's decision." Id. Furthermore, "[t]he court must explain on the record why the defendant does not qualify under its analysis, and if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others." Id.

We recognize that this court has been split regarding the proper standard of review when addressing judicial diversion. One rationale applies the standard announced in Bise, abuse of discretion with a presumption of reasonableness. See State v. Paresh J. Patel, No. M2012-02130-CCA-R3-CD, 2013 Tenn. Crim. App. LEXIS 588, at **11-12 (Knoxville, July 10, 2013); State v. Collier Smith, No. W2012-01455-CCA-R3-CD, 2013 Tenn. Crim. App. LEXIS 409, at *12 (Jackson, May 16, 2013), State v. Lewis Green, No. W2011-02593-CCA-R3-CD, 2013 Tenn. Crim. App. LEXIS 290, at **27-28 n.1 (Jackson, Mar. 28, 2013); State v. Kiara Tashawn King, No. M2012-00236-CCA-R3-CD, 2013 Tenn. Crim. App. LEXIS 192, at *19 (Nashville, Mar. 4, 2013), perm. to appeal granted, (Tenn. 2013). The other rationale applies the standard announced in Electroplating, Inc. and Parker, abuse of discretion with no presumption of reasonableness. See State v. Shanice L. Dycus, No. M2012-02297-CCA-R3-CD, 2013 Tenn. Crim. App. LEXIS 822, at *20 (Nashville, Sept. 25, 2013); Paresh J. Patel, No. M2012-02130-CCA-R3-CD, 2013 Tenn. Crim. App. LEXIS 588, at **11-12 (Tipton, P.J., concurring and dissenting) (Witt, J., concurring). Having considered both rationales, we conclude that the latter is correct and that we are bound by Electroplating, Inc. and Parker. Therefore, the standard of review in this case is abuse of discretion with no presumption of reasonableness.

Turning to the trial court's denial of judicial diversion, the court specifically stated that the appellant's absence of a prior record and the circumstances of the offense supported judicial diversion. Furthermore, as noted in the appellant's brief, the court's stating that the appellant was "a fine man in every way" but that "the public trust must be protected" demonstrate that the court also thought that the appellant's social history supported judicial diversion but that granting judicial diversion did not serve the interest of the public. Although the trial court determined that the three factors supporting judicial diversion did not outweigh the one factor against judicial diversion, the trial court did not specifically address the status of the appellant's amenability to correction, his physical and mental health, or the deterrence value to the appellant and others.

The State argues that the trial court "explicitly stated" that it considered all of the factors. The State is relying on the fact that the trial court filled out a form titled "SENTENCING FINDINGS OF FACT FOR OFFENSES COMMITTED ON OR AFTER JUNE 7, 2005." On the form, which is included in the technical record, the trial court placed a check mark beside each of the seven required factors that were listed on the form,

indicating that the court had considered all of the required factors for judicial diversion. However, as stated above, the trial court did not mention three of the factors during the sentencing hearing. As noted by the appellant, this court has previously stated that "when there is a discrepancy between what is reflected in the sentencing hearing transcript and what is on the judgment form, the transcript controls." State v. Adrian Porterfield, No. W2006-00169-CCA-R3-CD, 2007 Tenn. Crim. App. LEXIS 806, at *40 (Jackson, Oct. 15, 2007). We likewise conclude that the transcript controls in this situation and that the case must be remanded in order for the trial court to explain adequately on the record why it denied the appellant's request for judicial diversion and why the factors against judicial diversion outweighed the factors supporting judicial diversion.

In his minority opinion, Judge Williams refers to our supreme court's recent decision in State v. James Allen Pollard, ___ S.W.3d ___, No. M2011-00332-SC-R11-CD, 2013 Tenn. LEXIS 1011, at *22, 33 (Tenn. 2013), in which that court specifically applied the abuse of discretion standard, accompanied by a presumption of reasonableness, to appellate review of consecutive sentencing and even went on to say that the standard applies to all sentencing decisions. Judge Williams states that he would affirm the trial court's denial of judicial diversion in this case "by simply choosing the other option provided by our supreme court in Pollard: 'conduct[ing] a de novo review to determine whether there is an adequate basis' for the trial court's decision." However, given that this case, like Pollard, involves a fact-intensive inquiry regarding requisite factors, we believe that a remand is required under either standard of abuse of discretion with a presumption of reasonableness or abuse of discretion with no presumption of reasonableness.

As to the appellant's claim that the trial court denied his request based solely upon his status as a law enforcement officer and that the trial court's reasoning would always result in the denial of judicial diversion for a law enforcement officer convicted of sexual contact with an inmate, we agree with the appellant that, by not listing sexual contact with an inmate as one of the offenses excluded from consideration in the judicial diversion statute, the legislature intended for defendants, specifically contemplated by the statute to be law enforcement officers, to be eligible for judicial diversion. Therefore, upon remand, the trial court should demonstrate that the denial was not based solely upon the fact that the appellant was a police officer.

## III. Conclusion

Based upon the record and the parties' briefs, we reverse the judgment of the trial court and remand the case further proceedings consistent with this opinion.

_____
NORMA McGEE OGLE, JUDGE